UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) JAMES GRAHAM, as SPECIAL ADMINISTRATOR for
the ESTATE OF ANTHONY HUFF, Deceased,

      Plaintiff,

vs.

(1) GARFIELD COUNTY DETENTION CENTER, an
Oklahoma Title 60 authority;
(2) BOARD OF COUNTY COMMISSIONERS OF THE
COUNTY OF GARFIELD, a Political Subdivision of the State
of Oklahoma;
(3) JERRY NILES, individually, and in his official capacity as
Sheriff of Garfield County;
(4) JENNIFER NILES, individually and in her official capacity
as Jail Administrator of the Garfield County jail;
(5) TURN KEY HEALTH CLINICS, LLC, an Oklahoma
limited liability corporation;
(6) LELA GOATLEY, an individual;  and
(7-9) JOHN DOES (1-3), unknown individuals who were
involved but not yet identified,

      Defendants.

Case No.  CIV-17-634-M

**JURY TRIAL DEMANDED**

## COMPLAINT

COMES NOW Plaintiff, James Graham, as Special Administrator for the Estate of

Anthony Huff, Deceased, and alleges and states as follows:

### I. Jurisdiction and Venue

1.     That this action is brought pursuant to 42 U.S.C. §1983  and the Fourth, Eighth

and Fourteenth Amendments to the United States Constitution, as well as the laws of the

State of Oklahoma.

2.     That this Court has federal question jurisdiction of this action pursuant to 28

U.S.C. §1331; venue is proper pursuant to 28 U.S.C. §1391.

3.      That the matter in controversy exceeds $75,000, exclusive of costs and interest.

4.      That Plaintiff also asserts causes of action arising under Oklahoma law, namely claims for negligence, assault and battery and wrongful death. This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. §1367.

5.      That Plaintiff is now, and was at all times material hereto, a resident of Garfield County, State of Oklahoma. (Plaintiff's decedent shall be referred to as "Mr. Huff" or "Plaintiff's decedent" or "Anthony Huff.")

6.      That Defendant Garfield County Detention Center ("GCDC") is now, and was at all times material hereto, an Oklahoma Title 60 authority.

7.      That Defendant "Board of County Commissioners of the County of Garfield ("BOCC") is a political subdivision of the State of Oklahoma responsible for the GCDC and is properly named pursuant to 19 O.S. §4.

8.      That Defendant Jerry Niles ("Defendant Sheriff Jerry Niles" or "Jerry Niles"), is a duly elected Sheriff of Garfield County, Oklahoma, a political subdivision of the State of Oklahoma, and is responsible for the operation of the GCDC. Jerry Niles is sued in both his individual capacity and in his official capacity for acts performed while he was the Sheriff of Garfield County. Jerry Niles is sued for both federal and state law claims. At all times relevant herein, Jerry Niles was acting under the color of law and within the course and scope of his employment with Garfield County, State of Oklahoma.

9.     That Defendant Sheriff Jerry Niles, as Sheriff of Garfield County, is the final policy maker for the Garfield County Sheriff's office. There is no other person who has authority over the Sheriff of Garfield County, acting in his capacity as Sheriff. Both as to his own conduct and conduct of his employees, because of his position as Sheriff as Garfield County, the acts, customs, policies, practices, failure to train and failure to supervise his employees alleged herein are attributable to the County as well as to the Sheriff in his official capacity.

10.     That Defendant Jennifer Niles ("Jennifer Niles"), is and was at all times pertinent to this action the Jail Administrator or Detention Administrator of Garfield County, Oklahoma, a political subdivision of the State of Oklahoma, and is responsible for the operation of the GCDC. Jennifer Niles is sued in both her individual capacity and in her official capacity for acts performed while she was the Jail Administrator of Garfield County. Jennifer Niles is sued for both federal and state law claims. At all times relevant herein, Jennifer Niles was acting under the color of law and within the course and scope of her employment with Garfield County, State of Oklahoma.

11.     That Defendant Lela Goatley ("Goatley") is an individual who was at all times pertinent to this action a resident of the State of Oklahoma and a nurse who worked for Defendant Turn Key. Defendant Goatley was responsible for providing care, monitoring and observing Mr. Huff during the time he was placed in the restraint chair, and ensuring that he had been properly administered his medications.

3

12.     That Defendant John Doe(s) 1-3 represent other persons whose identities are not yet known, but caused or contributed to Anthony Huff's death by virtue of their position, acting under the color of law, negligence and intentional conduct.

13.     That all of the conduct of the Defendants was within the exercise of State authority within the meaning of 42 U.S.C. §1983.

14.     That by and through Defendants Sheriff Jerry Niles, Garfield County deliberately failed to take remedial action in the face of actual and/or constructive knowledge of constitutional violations and the assault and battery against Plaintiff's decedent.

15.     That Turn Key Health Clinics, LLC ("Turn Key") is now, and was at all times material hereto, is a corporation organized under the laws of the State of Oklahoma and provides and manages the day-to-day medical operations in jails.

16.     That at all material times herein, Defendant Sheriff Jerry Niles, as elected Sheriff of Garfield County, was responsible for providing detainees at the GCDC with reasonable medical care.

17.     That pursuant to the Governmental Tort Claims Act, the Plaintiff submitted Notice of Tort Claim which was received by the County on February 28, 2017. This case is being filed at this time so as to preserve and protect the Statute of Limitations on behalf of the Plaintiff.

18.     That at all material times hereto, Anthony Huff was a resident of Garfield County, State of Oklahoma.

4

19.     That the acts and/or omissions giving rise to the Plaintiff's claims arose in Garfield County, State of Oklahoma, which is within the confines of the United States District Court for the Western District of Oklahoma.

## II. Factual Background

20.     That Plaintiff adopts and re-alleges all material allegations in paragraphs 1 through 18 as if set forth below.

21.     That on June 4, 2016, Anthony Huff was taken into custody on suspicion for Public Intoxication by the Enid Police Department and placed into the GCDC.

22.     That the GCDC and Turn Key were familiar with Mr. Huff from prior detentions, including a Medical/Mental Screening completed by Mr. Huff on January 10, 2016 and a screening performed by Turn Key on May 17, 2016. Based on records from the prior admissions, medical staff knew Mr. Huff required medication for heart disease; suffered from insomnia, hypertension and depression; and knew he took Coreg and Lisinopril for coronary artery disease and Sertaline and Zoloft for depression and has a reported a history of alcoholism.

23.     That on June 4, 2016, when Mr. Huff was taken into custody, he did not receive an initial medical screening and was booked into GCDC without any of his prescribed medications.

24.     That at some point the time of his incarceration, Mr. Huff started experiencing hallucinations and exhibiting delusions.

25.     That on June 6, 2016, Mr. Huff  was placed in a restraint chair where he remained until his death on June 8, 2016.

26.     That at the time of his death, only a trace of Sertaline and no other medications were found in Mr. Huff's blood.

27.     That prior to being placed in the restraint chair, Mr. Huff's medical record was not reviewed by medical personnel for any medical condition that may affect the use of the restraint chair.

28.     That if Mr. Huff's medical record was reviewed by medical personnel before being confined to the restraint chair, no such medical condition or review was documented in the medical/clinical record.

29.     That the policies and procedures of  the State of Oklahoma and Garfield County related to the use of the restraint chair required that medical personnel evaluate the detainee (in this case, Mr. Huff) to give medical approval as to the use of the restraint chair, and also required such personnel to exercise supervision while he was in the restraint chair.

30.     That prior to being placed in the restraint chair, a medical recommendation or approval of the restraint chair for use on Mr. Huff was not issued or obtained.

31.     That at all times pertinent to this action, the policies and procedures of the GCDC related to the use and implementation of a restraint chair on an inmate or detainee required that the process and procedure of placing the inmate or detainee into the restraint chair be filmed, videotaped or electronically recorded.

32.     That the area in which the restraint chair that was used on Mr. Huff was in a room that had video recording devices.

33.     That the GCDC did not film, videotape or electronically record Mr. Huff being placed into the restraint chair.

34.     That if GCDC did record Mr. Huff being placed into the restraint chair, the film or recording has been destroyed.

35.     That the GCDC did not start filming, videotaping or recording Mr. Huff's existence in the restraint chair until he had been in the chair for more than 30 hours.

36.     That at all times pertinent to this action, the policies and procedures of the GCDC related to the use and implementation of a restraint chair on an inmate or detainee required that the inmate or detainee be under direct and constant observation while in the restraint chair.

37.     That at all times pertinent to this action, the policies and procedures of the GCDC related to the use and implementation of a restraint chair on an inmate or detainee required that personnel document the observations every 15 minutes.

38.     That at all times pertinent to this action, the policies and procedures of the GCDC related to the use and implementation of a restraint chair on an inmate or detainee required that personnel offer the inmate or detainee in the restraint chair the opportunity to use the bathroom whenever appropriate, and no less than every two hours. Such conduct was also required to be documented.

39.     That at all times pertinent to this action, the policies and procedures of the GCDC related to the use and implementation of a restraint chair on an inmate or detainee required that personnel offer the inmate or detainee in the restraint chair the opportunity to eat meals made up appropriate finger foods at proper times. Such conduct was also required to be documented.

40.     That at all times pertinent to this action, the policies and procedures of the GCDC related to the use and implementation of a restraint chair on an inmate or detainee required that personnel offer hydration to the inmate or detainee in the restraint chair whenever appropriate, but at least every two hours. Such conduct was also required to be documented.

41.     That at all times pertinent to this action, the policies and procedures of the GCDC related to the use and implementation of a restraint chair on an inmate or detainee required that personnel check the circulation of the inmate or detainee in the restraint chair every four hours. Such conduct was also required to be documented.

42.     That due to Mr. Huff's medical history of heart disease, he should have received regular blood pressure checks and regular assessments as to his medical condition.

43.     That according to jail records, Mr. Huff did not receive regular blood pressure checks or regular assessments.

44.     That Mr. Huff did not receive his blood pressure medication as prescribed while incarcerated in the GCDC from June 4, 2016, through June 8, 2016.

8

45.     That the  GCDC, Goatley and Turn Key knew Mr. Huff was not eating or drinking water while he was confined to the restraint chair.

46.     That the GCDC, Goatley and Turn Key did not offer hydration to Mr. Huff at least every two hours while he was in the restraint chair.

47.     That the GCDC, Goatley and Turn Key did not offer appropriate food at appropriate times to Mr. Huff while he was in the restraint chair.

48.     That while Mr. Huff was in the restraint chair, GCDC personnel did offer him food at one point in time, but only in a manner that made it impossible for him to consume the food.

49.     That the written logs on which documentation related to Mr. Huff's confinement to the restraint chair contained information that was false.

50.     That at all material times herein, GCDC had an average daily inmate population of approximately less than 225.

51.     That at all material times herein, GCDC was responsible for staffing mental health professionals (including psychiatrists) at GCDC.

52.     That Mr. Huff died while in the restraint chair on June 8, 2016.

53.     That Defendants know, were told, or have been told  that Mr. Huff died more than 30 minutes before anyone checked on him.

54.     That Defendants removed Mr. Huff from the restraint chair before outside medical personnel arrived upon the scene and before any investigation into Mr. Huff's death could take place.

55.     That Defendants made no attempts to resuscitate Plaintiff's decedent for more than 30 minutes before outside medical personnel arrived upon the scene on the day that he died.

56.     That Defendant Sheriff Jerry Niles is responsible for establishing procedures, policies, supervision and training for the orderly, lawful and safe operation of the Garfield County Jail. The duty of Defendant Sheriff Jerry Niles includes ensuring the safety of detainees and the prevention of harm to detainees by law enforcement personnel.

57.     That as the Sheriff of Garfield County, Defendant Sheriff Jerry Niles had the duty and responsibility of ensuring that the GCDC operated in a manner that provided and ensured the safety of not only the inmates and detainees, but also the employees of the Garfield County Sheriff's Office and the public at large.

58.     That as the Sheriff of Garfield County, Defendant Sheriff Jerry Niles had the duty of creating a culture and atmosphere of respect for the policies and procedures of the GCDC, but also for the rule of law and respect for all human beings.

59.     That prior to Mr. Huff's death, Defendant Sheriff Jerry Niles engaged in a pattern and practice of violating policies and procedures and creating a culture in which violation of policies and procedures was tolerated and/or encouraged.

60.    That on March 18, 2016, less than three months before Mr. Huff died, an employee of the Garfield County Sheriff's Department advised Defendant Sheriff Jerry Niles that she had witnessed several occasions of violent and inappropriate behavior by jail employees, including improper strapping of inmates. The behavior had been witnessed and seen by the Sheriff's Department employee on video monitors located at the Garfield County Courthouse; the behavior at issue occurred at the GCDC.

61.    That the response to the employee's complaint included, but was not limited to, cutting off the video feed from the GCDC to the Garfield County Courthouse, thus preventing the Sheriff's Department employees at the Courthouse to monitor and observe the inmates or detainees who were being transported to the Courthouse from the GCD

62.    That the actions or conduct in cutting off he video feed from the jail to the courthouse eliminated important information to the Sheriff's Department employees needed or would utilize in dealing with the inmates or detainees being brought to the Courthouse.

63.    That prior to the events in question herein, and as a direct cause thereof, Defendant Sheriff Jerry Niles failed to establish and enforce procedures for the safety of detainees who are placed in restraint chairs in the GCDC, including but not limited to:

a.    procedures, policies, supervision and training concerning the appropriate manner in which to place a detainee in a restraint chair;

b.    procedures, policies, supervision and training concerning the appropriate manner in which to give a detainee or prisoner in a restraint chair the proper amount of breaks;

11

c.      procedures, policies, supervision and training of how to monitor those who are placed in a restraint chair; and

d.      procedures, policies, supervision and training of how to administer medication to detainees such as Plaintiff's decedent, Mr. Huff,  based on the needs of the detainee and recommendations by his or her physicians.

### III. First Cause of Action-Negligence

64.      That Plaintiff adopts and re-alleges all material allegations in paragraphs 1 through 63 as if set forth below.

65.      That Defendants were negligent in failing to provide Mr. Huff with appropriate and adequate medical care.

66.      That although Mr. Huff reported a history of hypertension, mental illness, and had informed Defendants of medications he had been taking prior to his arrest, he never received them.

67.      That all Defendants, by and through their agents and employees, failed to administer medication prescribed to Mr. Huff.

68.      That all Defendants failed to provide Mr. Huff with a timely examination by a psychiatrist so as to ensure that he received necessary medications that he had been taking prior to his incarceration.

69.      That all Defendants failed to perform regular blood pressure checks on Plaintiff's Decedent, Mr. Huff.

70.      That all Defendants  performed no blood pressure checks on Plaintiff's Decedent, Mr. Huff, nor performed a physical examination of any kind on Mr. Huff.

71.    That all Defendants failed to provide Mr. Huff with appropriate psychiatric care on or prior to June 8, 2016.

72.    That all Defendants failed to provide Mr. Huff  with reasonable psychiatric care throughout his incarceration at GCDC.

73.    That all Defendants were negligent in permitting Mr. Huff to go days without receiving necessary psychiatric medication.

74.    That all Defendants were negligent in permitting Mr. Huff to go days without receiving psychiatric medication he had been taking prior to his incarceration at GCDC.

75.    That Defendants failed to perform regular sight checks on Mr. Huff  despite the fact that he suffered from multiple medical conditions which necessitated constant monitoring.

76.    That Defendants failed to perform adequate sight checks on Mr. Huff  despite the fact that he suffered from multiple medical conditions which necessitated constant monitoring.

77.    That Mr. Huff was arrested on June 4, 2016, and being detained for public intoxication.

78.    That Defendants had previous experience with Mr. Huff  based on detaining him in the GCDC on prior occasions, and knew that he had a history of problems with alcohol and was subject to symptoms of withdrawals from alcohol.

79.    That from the time he was arrested on June 4, 2016, through the time he died on June 8, 2016, Mr. Huff did not consume any alcohol.

80.    That from the time he was placed in the restraint chair until the time he died on June 8, 2016, Mr. Huff did not consume any alcohol.

81.    That after being detained on June 4, 2016, Mr. Huff began to suffer from, and exhibited signs and symptoms of, alcohol withdrawal.

82.    The none of the Defendants herein provided care or treatment to Mr. Huff for alcohol withdrawal from the time he was detained on June 4, 2016, through the time he died on June 8, 2016.

83.    That from June 6, 2016, until he died on June 8, 2016, Defendants failed to ensure that Mr. Huff received timely breaks from the restraint chair.

84.    That from June 6, 2016, until he died on June 8, 2016, Defendants failed to ensure that Mr. Huff received timely breaks from the restraint chair to go to the restroom.

85.    That from June 6, 2016, until he died on June 8, 2016, Defendants failed to ensure that Mr. Huff received sufficient food or water.

86.    That the lack of breaks from the restraint chair from June 6, 2016 through the time he died on June 8, 2016, resulted in Mr. Huff soiling himself while in the restraint chair.

87.    That from June 6, 2016, until he died on June 8, 2016, Defendants did not allow Mr. Huff to change clothes.

88.     That from June 6, 2016, until he died on June 8, 2016, Mr. Huff was not provided, and not allowed to consume, enough water to remain hydrated.

89.     That from June 6, 2016, until he died on June 8, 2016, Mr. Huff was not provided, and not allowed to consume, enough food to help him withstand the stress of being in the restraint chair.

90.     That Mr. Huff died due to conditions related to his withdrawal from alcohol, and the effects it had on his body and system.

91.     That the lack of food and water from June 6, 2016, through June 8, 2016, exacerbated the conditions described above and further caused or contributed to the death of Mr. Huff.

92.     That the lack of water and food from June 6, 2016, through June 8, 2016, caused or contributed to the exacerbation of Mr. Huff's health conditions that led to him dying in the restraint chair on June 8, 2016.

93.     That Defendants Sheriff Jerry Niles, Jennifer Niles and Goatley were on notice that Mr. Huff was placed in a restraint chair on June 6, 2016, and was on notice that he remained or was placed  in the chair every day from June 6, 2016, through the time he died on June 8, 2016.

94.     That Defendant Jennifer Niles ordered that Mr. Huff be placed in a restraint chair on June 6, 2016, and was on notice that he remained or as placed in the chair every day from June 6, 2016, through the time he died on June 8, 2016.

15

95.     That Defendant Jennifer Niles was the Jail Administrator and/or Detention Administrator of the GCDC at all times pertinent to this action.

96.     That the Jail Administrator and/or Detention Administrator of the GCDC is responsible for the administration and supervisory control involving the operations of the GCDC.

97.     That the Jail Administrator and/or Detention Administrator of the GCDC at all times pertinent to this action was required to maintain a maximum knowledge of the day-to-day operational requirements and governing policies and procedures of the GCDC, and had the opportunity to observe shortcomings and take those actions necessary to correct the discrepancies in at timely manner.

98.     That the Jail Administrator and/or Detention Administrator of the GCDC at all times pertinent to this action was the ranking supervisor, who worked directly for Defendant Sheriff Jerry Niles and was responsible for compliance with the Policies and Procedures of the GCDC, the Oklahoma Minimum Jail Standards and applicable federal statutes.

99.     That the Jail Administrator and/or Detention Administrator of the GCDC at all times pertinent to this action was required to establish training requirements to comply with state and federal standards.

100.    That the Jail Administrator and/or Detention Administrator of the GCDC at all times pertinent to this action was responsible for a) reviewing that appropriate disciplinary actions taken were in compliance with established procedures, b) overseeing that an inmate's

medical needs were met and were in compliance with established policies; and c) reviewing and approving all incident reports, forward accurate and completed reports to the Sheriff with appropriate recommendations.

101.    That an investigation of the Mr. Huff's death was conducted by the GCDC, and statements were obtained from personnel who were involved in placing Mr. Huff into the restraint chair and who were present on the date of his death.

102.    That based on the investigation that was conducted, neither Defendant Sheriff Niles nor Defendant Jennifer Niles recommended that anyone involved in the care, custody, control or supervision of Mr. Huff be disciplined, and no one to this date has been disciplined based on how Mr. Huff was treated at the GCDC from June 4, 2016, through June 8, 2016.

103.    That while the Jail Administrator and/or Detention Administrator is charged with operation and supervision of the GCDC, the same duties and responsibilities, including those outlined in Paragraphs 95-99  above, are also applicable to Defendant Sheriff Jerry Niles.

104.    That Sheriff Niles was aware of a pattern of misconduct as it relates to using the restraint chair, and responded inappropriately and with deliberate indifference to the use of the restraint chair.

105.    That Jennifer Niles was aware of a pattern of misconduct, as it relates to using the restraint chair, and responded inappropriately and with deliberate indifference to the use of the restraint chair.

106.    That leaving a detainee or prisoner in a restraint chair for 2 1/2 days without obtaining medical approval for being placed in the restraint chair, allowing a break at least every two hours, and for more than 48 hours, is a violation of the policies and procedures related to the use of a restraint chair in the Garfield County Jail at the time Mr. Huff was in the Garfield County Jail between June 6-8, 2016.

107.    That placing a detainee in a restraint chair for more than 48 hours without food or water being administered, without the detainee receiving his medications and without breaks at least every two hours constitutes cruel and unusual punishment.

108.    That Defendants deliberately failed to take remedial action in the face of the constitutional violations and violations of the policies and procedures of the State of Oklahoma and/or Garfield County as it relates to the use of the restraint chair.

109.    That prior to Mr. Huff being placed in the restraint chair, Defendant Sheriff Jerry Niles and BOCC had received complaints and was put on notice that the chair was not being used properly.

110.    That Defendant Sheriff Jerry Niles and BOCC were negligent in failing to investigate and adequately respond to prior complaints.

111.    That Defendant Sheriff Jerry Niles and BOCC were negligent in failing to properly train and supervise jailers and other staff working at the GCDC so as to prevent the improper and/or inappropriate use of the restraint chair.

112.    That Defendants, Defendant Sheriff Jerry Niles, Jennifer Niles and Garfield County (BOCC), were negligent in failing to establish and enforce internal rules, policies and procedures and state law governing the operations of jails within the State of Oklahoma.

113.    That Defendants, Defendants Sheriff Jerry Niles, Jennifer Niles and Garfield County (BOCC) had a duty under state law to the public, and to Plaintiff's decedent, to enforce and uphold internal rules, policies and procedures and state law governing the operations of jails within the State of Oklahoma and prevent the improper and inappropriate use of restraint chairs in the Garfield County Jail.

114.    That in addition to the actions listed above, the actions and conduct, in the alternative, also consisted of assault and battery upon Mr. Huff.

### IV. Violation of Civil Rights-42 U.S.C. 1983

115.    Plaintiff adopts and re-alleges all material allegations in paragraphs 1 through 114 as if set forth below.

116.    That Defendants deprived Mr. Huff of rights and privileges afforded to him under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. §1983.

117.    That Defendants have an affirmative duty to protect inmates from present and continuing harm and to ensure they receive adequate food, clothing, shelter, and medical care.

19

118.    That at all material times herein, Defendant Sheriff Jerry Niles and Garfield County (BOCC) had an obligation to the citizens of Garfield County, to maintain a jail that provided inmates with access to medical care.

119.    That at all material times herein, Defendant Sheriff Jerry Niles and Turn Key had an obligation to the citizens of Garfield County to ensure that inmates detained at GCDC were provided reasonable medical care.

120.    That at all material times herein, Defendant  Sheriff Jerry Niles and Turn Key had an obligation to the citizens of Garfield County to ensure that the serious medical needs of inmates detained at GCDC were timely and adequately addressed.

121.    That Defendants' failure to adequately attend to Mr. Huff's serious medical condition resulted in him experiencing unnecessary pain.

122.    That Defendants' failure to adequately attend to Mr. Huff's serious medical condition caused or contributed to his death.

123.    That Defendants' failure to adequately attend to Mr. Huff's serious medical condition was in violation of the Eighth Amendment.

124.    That Defendants' conduct evinced a deliberate indifference to the serious medical needs and safety of Mr. Huff.

125.    That GCDC and Turn Key violated its own policies and procedures by failing to conduct repeat blood pressure checks on Mr. Huff after he was admitted to GCDC on June 4, 2016.

20

126.   That GCDC and Turn Key failed to provide  Mr. Huff with blood pressure medication after he was admitted to GCDC on June 4, 2016.

127.   That GCDC's and Turn Key's  failure to provide Mr. Huff with prescribed blood pressure medication evinced a deliberate indifference to his serious medical needs.

128.   That GCDC and Turn Key knew, or should have known, that failure to administer blood pressure medication to Plaintiff's Decedent, Mr.  Huff, could result in him suffering permanent injury or harm.

129.   That GCDC's and Turn Key's failure to provide Plaintiff's Decedent, Mr.  Huff, with necessary blood pressure medication caused or contributed to his death.

130.   That Defendant Sheriff Jerry Niles exhibited a reckless disregard for the safety and welfare of the inmates detained at GCDC when he continued to allow Mr. Huff  to remain in the restraint chair without the proper amount of food, water or breaks from June 6, 2016, through June 8, 2016.

131.   That Defendant Sheriff Jerry Niles exhibited a reckless disregard for the safety and welfare of the inmates detained at GCDC when he allowed Mr. Huff to be placed in the restraint chair for 2 1/2 days without having first obtained a medical consultation or approval.

132.    That Defendant Sheriff Jerry Niles' conduct violated clearly established constitutional rights which a reasonable person in his position would have known.

133.   That at all material times herein, Defendant Sheriff Jerry Niles had an obligation to ensure that all detainees at GCDC received reasonable medical care.

21

134.    That in failing to take any action to protect Mr. Huff, each of the Defendants acted with deliberate indifference to the safety and Constitutional rights of Plaintiff's decedent.

135.    That at all material times herein, Defendant Sheriff Jerry Niles and Turn Key had an obligation to ensure that all detainees at GCDC received reasonable mental health care.

136.    That Mr. Huff did not receive reasonable mental health care.

137.    That Mr. Huff did not receive reasonable medical care.

138.    That Defendant Sheriff Jerry Niles hired Turn Key for purposes of providing medical care to inmates and persons detained at GCDC.

139.    That the above acts or omissions by Defendants are sufficiently harmful to evidence a deliberate indifference to Mr. Huff's serious medical needs.

140.    That the above acts or omissions by Defendants resulted in Mr. Huff suffering an unnecessary and wanton infliction of pain thereby constituting cruel and unusual punishment forbidden by the Eighth Amendment.

141.    That the above acts or omissions deprived Mr. Huff of the minimal civilized measure of life's necessities.

142.    All of the foregoing was done with reckless disregard of the Mr. Huff's constitutional rights.

143.    That the conduct at issue in paragraphs 1-142 above also constitute reckless, intentional and life-threatening conduct that resulted in Mr. Huff's death and entitle Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court enter Judgment against Defendants for actual and compensatory damages in excess of $75,000.00, award punitive damages, attorney fees, costs, and any and all other relief the Court deems just and equitable.

*s/David B. Donchin*

David B. Donchin, OBA #10783
Hilary S. Allen, OBA #
Durbin, Larimore & Bialick
920 North Harvey
Oklahoma City, OK 73102-2610
Telephone:  (405) 235-9584
Facsimile:  (405) 235-0551
dlb@dlb.net
            -and-
Randy J. Long, OBA #5515
Clint A. Claypole, OBA #30045
Reagan D. Allen, OBA #19739
Long, Claypole & Blakley Law, PLC
122 W. Randolph
P.O. Box 3623
Enid, OK 73702
Telephone: (580) 233-5225
Facsimile: (580) 233-3522
randy@lcb.law
clint@lcb.law
reagan@lcb.law
            -and-
Eddie Wyant, OBA #15133
Wyant Law Firm, P.L.L.C.
P.O. Box 508
Enid, OK 73702
Telephone: (580) 233-7799
Facsimile: (580) 297-5121
eddie@wyantlawfirm.com
Attorneys for Plaintiff